UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   EDCV 12-01520 VAP (SPx)                    Date:  November 8, 2012

Title:     ZACKARIA -v- WAL-MART STORES, INC.
================================================================
PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

    Marva Dillard                                        None Present
    Courtroom Deputy                                     Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

    None                                                 None

PROCEEDINGS:       MINUTE ORDER DENYING PLAINTIFF'S MOTION TO
                    REMAND (IN CHAMBERS)

    Before the Court is a Motion for Remand filed by Plaintiff Aladdin Zackaria (Doc. No. 8) ("Motion"). The matters came before the Court for hearing on November 5, 2012. The Court has considered all papers filed in support of, and in opposition to, the motion, and the arguments put forth at the hearing, and for the reasons set forth below, the Court DENIES Plaintiff's Motion.

## I. BACKGROUND

    Plaintiff Aladdin Zackaria, an asset protection coordinator ("APC") at a Wal-Mart store in San Bernardino County, brought this lawsuit in San Bernardino County Superior Court against Defendant Wal-Mart Stores, Inc. ("Wal-Mart") on behalf of himself and "[a]ll current and former California-based salaried 'Asset Protection

Coordinators,' or persons who held similar job titles and/or performed similar job duties . . . for Defendant[] within the State of California from four years preceding the filing" of his complaint until judgment. (See Compl., Ex. A to Not. of Removal (Doc. No. 1) ¶ 13.) Zackaria alleges Wal-Mart "engage[s] in a uniform policy and systematic scheme of wage abuse" by misclassifying APCs as salaried, rather than hourly, employees, therefore failing to pay them for overtime hours or missed meal and rest breaks. (Compl. ¶¶ 19, 27.) In so doing, Zackaria contends, Wal-Mart: (1) violates California Labor Code §§ 510, 1194, and 1198; (2) violates California Labor Code §§ 2698 et seq., and; (3) violates California Business & Professions Code §§ 17200 et seq. (See Compl. ¶¶ 53-97.)

Wal-Mart first removed the case to this Court on September 7, 2011. (See Opp. at 4.) On December 5, 2011, the Court remanded the case, explaining that Wal-Mart lacked sufficient evidence to demonstrate the amount in controversy requirement. (See Minute Order Granting Plaintiff's Motion to Remand, Ex. A to Mot.)

On September 6, 2012, Wal-Mart again removed the case from the San Bernardino Superior Court, alleging that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy exceeds $5 million; and (4) there is diversity between at least one class member and the defendant. See 28 U.S.C. § 1332(d).

On October 4, 2012, Plaintiff filed the instant Motion, seeking to remand the case to San Bernardino Superior Court. Wal-Mart filed an Opposition on October 15, 2012 (Doc. No. 12). Plaintiff filed a Reply on October 19, 2012 (Doc. No. 15).

## II. LEGAL STANDARD

Removal jurisdiction is governed by statute. See 28 U.S.C. §§ 1441, et seq. The Ninth Circuit has held unequivocally that the removal statute is construed strictly against removal. Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988). The strong presumption against removal jurisdiction means that "the defendant always has the burden of establishing that removal is proper." Gaus v.

Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990)); see also In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 957 (9th Cir. 2001) ("The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court.").

A defendant removing a case from state to federal court under CAFA faces a strong presumption against removal. See Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (listing cases); Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) ("removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts.").

When the removed complaint fails to allege a specific amount in controversy, and the amount in controversy is disputed, the removing defendant must prove by a preponderance of the evidence that the amount in controversy is greater than $5,000,000. Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010) (citing Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007)). When the complaint alleges an amount in controversy less than the jurisdictional threshold, a removing defendant must prove with "legal certainty" that the threshold is actually met. Guglielmino, 506 F.3d at 699 (citing Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1000 (9th Cir. 2007)). If a defendant fails to meet the requisite burden of proof, a court must remand for lack of subject-matter jurisdiction.

In determining the amount in controversy, the Court considers not only the facts alleged in the Complaint, taken as true for purposes of calculating the amount, but also "summary judgment type evidence relevant to the amount in controversy at the time of removal." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Comm., Inc., 627 F.3d 395, 400 (9th Cir. 2010). The removing party must produce enough evidence to allow a court "to estimate with certainty the actual amount in controversy." Lowdermilk, 479 F.3d at 1001.

### III. DISCUSSION

     The sole dispute here is whether Wal-Mart has demonstrated sufficiently that the $5 million amount in controversy requirement is met. "Here, as with many motions to remand based on the amount in controversy, the parties are put in an awkward situation. Plaintiff, desiring remand, argues that [he] seeks damages less than the statutory threshold. Defendant, striving to establish the federal court's jurisdiction, attempts to prove that Plaintiff's damages sought are higher than the threshold." <u>Behrazfar v. UNISYS Corp.</u>, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009). Wal-Mart alleges that the amount in controversy exceeds $5 million based on either of the following two pieces of evidence: 1) Plaintiff's counsel's proposed stipulation, and/or 2) Plaintiff's deposition testimony. Plaintiff, on the other hand, argues that there is no evidence to demonstrate that the amount in controversy is greater than $5 million.

     As a preliminary matter, the Court addresses Plaintiff's argument that this case should be remanded because Wal-Mart's notice of removal asserts the very same grounds as its first failed removal. This is inaccurate. Wal-Mart's removal here is based on new facts, not available at the time of Wal-Mart's first removal, to support its argument that the amount in controversy is met. A party may file a second notice of removal. <u>See</u> <u>Mattel, Inc. v. Bryant</u>, 441 F. Supp. 2d 1081, 1089 (C.D. Cal. 2005) ("if a district court remands a case to state court because the defendant failed to prove the jurisdictional amount, but the plaintiff after remand disclosed that the amount in controversy is greater than the statutory amount in controversy, the defendant may file a second notice of removal"); <u>Sweet v. United Parcel Service, Inc.</u>, 2009 WL 1664644, at *3 (C.D. Cal. June 15, 2009) ("successive notices of removal . . . generally must be based on information not available at the prior removal").

**B.    Plaintiff's Proposed Stipulation**
     On August 7, 2012, Plaintiff's counsel sent an electronic mail message ("e-mail") to Wal-Mart's counsel with an offer to stipulate (the "Proposed Stipulation"), stating:

> We kindly request that Defendant stipulate that the Court shall enter judgment in a sum greater than 5 million dollars if 1) if the Court certifies the case, 2) Plaintiff proves liability at trial, and 3) Plaintiff proves that the

    class is entitled to at least one penny from Defendant.  Please confirm
    that your client is agreeable.  Thank you.

(Ex. G to Declaration of Edwin Aiwazian ("Aiwazian Decl.").)  Wal-Mart's counsel responded: "Time to remove !"  (Id.)

  Wal-Mart characterizes the Proposed Stipulation as a "demand of judgment" and argues that this demand demonstrates that the amount of damages is greater than $5 million.  (Not. of Removal at 6)  To support its argument, Wal-Mart relies on case law in which courts found a settlement demand to demonstrate a reasonable estimate of damages, for purposes of determining whether the amount of controversy is met.  (Opp. at 13-14.)

  Plaintiff argues neither he nor his counsel represented the amount in controversy exceeds $5 million.  Plaintiff explains that the Proposed Stipulation was sent "to demonstrate the impropriety of Defendant's discovery requests," requests that sought an admission from Plaintiff that the recovery in this case is less than $5 million.  (Reply at 7-8.)  Plaintiff further argues that stipulations, such as the one Plaintiff proposed, are generally frowned upon and should be avoided.  (Mot. at 11-12.)

  Plaintiff's arguments are not persuasive.  Regardless of Plaintiff's motive in sending the Proposed Stipulation, Plaintiff did, in fact, propose a stipulation asking Wal-Mart to agree that any judgment would be greater than $5 million.  Although such stipulations may be frowned upon, as Plaintiff suggests, the Proposed Stipulation was sent <u>by</u> Plaintiff.  Any attempt by Plaintiff to distance himself from the Proposed Stipulation, on the basis of motive or impropriety, is misleading.

  Plaintiff also argues that the Proposed Stipulation cannot demonstrate that the amount in controversy requirement is met because Wal-Mart "refused" to enter into the stipulation.  (Mot. at 12.)  Plaintiff compares this to a case in which a defendant would be permitted to remove a case if a plaintiff refused to sign a stipulation that the amount in controversy was less than $5 million.  (Id.)  Plaintiff argues that, in such a case, removal would not be permitted only on  plaintiff's refusal to stipulate. (Id.)  Accordingly, Plaintiff argues that Wal-Mart's refusal to sign a stipulation that

damages exceed $5 million is not conclusive evidence that the amount in controversy is met. (Id.)

Plaintiff's argument mischaracterizes the evidence offered in support of the removal. Here, Wal-Mart relying on Plaintiff's refusal to stipulate that damages are less than $5 million (although Wal-Mart did seek such an admission). Rather, Wal-Mart presents evidence that Plaintiff, himself, asked Wal-Mart to stipulate to damages in excess of $5 million -- the opposite of the hypothetical presented by Plaintiff. Plaintiff here has served up an amount that exceeds the jurisdictional requirement; it is irrelevant whether Wal-Mart agreed to it or not.

While the Proposed Stipulation is not captioned as a settlement demand, it does explicitly ask Wal-Mart to stipulate to a judgment of greater than $5 million. This reflects a reasonable estimate of damages, considering the allegations and the potential class, and reflects an amount that exceeds the $5 million amount in controversy requirement. Therefore, the Proposed Stipulation is sufficient evidence to demonstrate that the amount in controversy is met. See Arellano v. Home Depot U.S.A., Inc., 245 F. Supp. 2d 1102, 1108 (S.D. Cal. 2003) ("If damages are not clearly specified in the pleadings, the court may rely upon a variety of documents, including written settlement demands."); Molina v. Lexmark Int'l, Inc., 2008 WL 4447678, at *4 (C.D. Cal. Sep. 30, 2008) ("A document reflecting a settlement demand in excess of the jurisdictional minimum constitutes 'other paper' sufficient to provide notice that a case is removable"); Carvalho v. Equifax Info. Svcs., LLC, 629 F.3d 876 (9th Cir. 2010) ("a demand letter sent during the course of the state court action can constitute 'other paper'"); Cohn v. Petsmart, Inc., 281 F.3d 837, 885 (9th Cir. 2002) ("a settlement letter is relevant evidence of the amount in controversy"); Babasa v. LensCrafters, Inc., 498 F.3d 972 (9th Cir. 2007) (same).

**B.    Plaintiff's Deposition Testimony**

In the alternative, Wal-Mart argues that Plaintiff's deposition testimony provides the basis for at least two calculations of damages, either of which demonstrates that the amount in controversy is met.

### 1.    First Calculation

Wal-Mart argues that Plaintiff's deposition testimony demonstrates he worked

at least 60 hours per week, and based on his actual salary during this period, Plaintiff's claim for overtime compensation alone exceeds $94,000. (Not. of Removal at 7.) Wal-Mart also argues that Plaintiff testified that he was routinely not able to take a meal break, and again, using his actual salary, calculated his additional claim for unpaid wages as more than $11,000. (Id. at 8.) Therefore, Wal-Mart argues, Plaintiff's individual overtime claim and meal break claim alone totals more than $105,000. (Id.) According to Wal-Mart, since Plaintiff's claims are typical of the other class members, and since Plaintiff testified that other class members worked similar hours, Plaintiff's claim of $105,000, applied to all class members, results in an amount in controversy that exceeds $24,000,000. (Id. at 8-9.)

In his deposition, Plaintiff testified as follows:

1. While conducting inventory at a store, Plaintiff would work 14-hour days. (Deposition of Aladdin Zackaria ("Zackaria Deposition"), Ex. E to Declaration of Robert J. Herrington ("Herrington Decl."), 169:18-23.)
2. During store "blitzes,"[1] Plaintiff would work 12-14 hour days. (Zackaria Dep. 171:21-172:3.)
3. Other APCs who conducted inventory and blitzes with Plaintiff worked similar hours. (Zackaria Dep. 178:21-179:9; 213:2-214:19.)
4. When there was no "blitz" or inventory, Plaintiff would work 10 hours per day. Plaintiff's normal schedule was about 50 hours per week. (Zackaria Dep. 174:11-23.)
5. Plaintiff only took a lunch break 1-2 days per week, and took rest breaks 1-3 days per week. (Zackaria Dep. 247:16-248:18.)

As an initial matter, Plaintiff objects to testimony offered regarding the number of hours worked by other APCs on the grounds of hearsay. The objected-to testimony is as follows:

---

[1] A "blitz" is a two day event in which many APCs from different stores attempt to catch shoplifters at a particular Wal-Mart store that has lost a lot of merchandise due to shoplifting. (Reply at 6, n. 1).

> Q: At what time, did you have any knowledge of whether other APCs at other stores were also working those same kind of hours?
> A: Yes.
> Q: And what's the basis of your knowledge at that time?
> A: APCs, we get together to like training classes and they talk about these things.
> Q: And you would also get together to blitz's, correct?
> A: That's right.
> Q: And you would also get together on inventory days, right?
> A: Correct.
> Q: So it was your personal observation that the other APCs were working the same long hours as you, correct?
> ...
> Q: And were there times where you participated in investigations with other APCs?
> A: Yes.
> Q: And on those occasions, did you work side by side with other APCs in conducting those investigations?
> A: Yes.
> Q: Was it your observation at that time that those APCs were working the same or similar hours that you were working?
> A: Yes.

(Zackaria Dep. 178:11-179:9; 214:9-19.)

To the extent that Plaintiff bases his knowledge of the hours worked by other APCs on conversations he had with those APCs regarding their hours, and to the extent Wal-Mart relies on that evidence to demonstrate the number of hours worked by those employees, that evidence is hearsay and Plaintiff's hearsay objection is sustained. On the other hand, to the extent that Plaintiff testifies to his personal knowledge regarding the number of hours worked by APCs, based on his own personal observation, Plaintiff's hearsay objection is overruled. Plaintiff does testify that he observed personally APCs working similar hours as him during inventory, blitzes, and investigations.

Wal-Mart's first calculation is insufficient to demonstrate that the amount in controversy requirement is met. First, Wal-Mart bases its calculation on the allegation that Plaintiff regularly worked at least 60 hours per week. This is unsupported. The evidence does not demonstrate how often the inventory days and "blitzes," requiring Plaintiff to work roughly 60 hours per week, occurred. Instead, Plaintiff testified that, when "blitzes" and inventory days did not occur, he would often work 50 hours per week.

Second, Wal-Mart bases its calculation on Plaintiff's actual salary; yet, Wal-Mart provides no basis for applying Plaintiff's actual salary to the entire class. Third, although Plaintiff did testify that other APCs worked similar hours as him, he did not testify as to whether they received as few meal breaks as he did. Therefore, Wal-Mart's calculation of overtime pay and unpaid wages based on 1) a 60-hour work week; 2) testimony regarding the frequency of only Plaintiff's own meal breaks; and 3) Plaintiff's actual salary, all of which is applied across the board to the entire class, is not a reasonable estimate, but rather an unsupported leap. Wal-Mart's first calculation does not demonstrate that the amount in controversy requirement is met.

### 2. Second Calculation

Wal-Mart's second calculation, however, has support, and demonstrates sufficiently that the amount in controversy requirement is met. Plaintiff testified that he regularly worked 50 hours per week, and that APCs at other stores worked similar hours. (Zackaria Dep. 174-80, 210-11; Not. of Removal at 10.) Wal-Mart alleged that there were approximately 160 people classified as APCs in California during the class period. (Id.) Wal-Mart used the lowest bi-weekly salary for APCs ($1,153.85, which equates to $14.42 an hour; $21.63/hour for overtime pay) to calculate an overtime claim for all APCs. Based on the allegation that all APCs worked approximately 10 hours of overtime per week, Wal-Mart determined that the class overtime claim for APCs alone is approximately $9,000,000. (Id. at 10.)

The Court finds that Wal-Mart meets its burden here in demonstrating that the amount in controversy is met. Defendant's calculations "were relatively conservative, made in good faith, and based on evidence wherever possible." Behrazfar v. UNISYS Corp., 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009); see also Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)

(defendant's burden "is not 'daunting,'" and "a removing defendant is <u>not</u> obligated to 'research, state, and prove the plaintiff's claims for damages.'" (emphasis in original)). Contrary to Plaintiff's contention at the hearing, Wal-Mart's calculation of damages is not speculative, but is instead reasonable and based on the deposition testimony of the lead Plaintiff. Wal-Mart need not complete pre-certification discovery before being able to calculate Plaintiff's damages claims for purposes of calculating the amount in controversy. Therefore, Wal-Mart's second calculation establishes that the amount in controversy requirement is met.

## IV. CONCLUSION

For the reasons set forth above, Wal-Mart demonstrates that the amount in controversy requirement is met based on either 1) Plaintiff's proposal to Wal-Mart to stipulate that damages exceed $5 million, and/or 2) Plaintiff's deposition testimony, based on Wal-Mart's second calculation. Therefore, the Court DENIES Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**