1  R. Rex Parris, Esq. (SBN 96567)
        rrparris@rrexparris.com
2  Alexander R. Wheeler, Esq. (SBN 239541)
        awheeler@rrexparris.com
3  Kitty Szeto, Esq. (SBN 258136)
        kszeto@rrexparris.com
4  Jacob L. Karczewski, Esq. (SBN 268295)
        jkarczewski@rrexparris.com
5  John M. Bickford, Esq. (SBN 280929)
        jbickford@rrexparris.com
6  **R. REX PARRIS LAW FIRM**
   43364 10th Street West
7  Lancaster, California 93534
   Telephone:  (661) 949-2595
8  Facsimile:  (661) 949-7524

9  Edwin Aiwazian, Esq. (SBN 232943)
        edwin@lfjpc.com
10 **LAWYERS *for* JUSTICE, PC**
   410 West Arden Avenue, Suite 203
11 Glendale, California 91203
   Telephone: (818) 265-1020
12 Facsimile: (818) 265-1021

13 Attorneys for Plaintiff and the Putative Class

14

15 **UNITED STATES DISTRICT COURT**

16 **CENTRAL DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| ALADDIN ZACKARIA; individually, and on behalf of other members of the general public similarly situated, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"); | Case No. 5:12-cv-01520-FMO-SP |
| | **CLASS ACTION** |
| Plaintiff, | **PLAINTIFF'S SUMMARY OF EVIDENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | Date:       May 29, 2014 |
| WAL-MART STORES, INC., a Delaware corporation and Does 1 through 100, inclusive, | Time:       10:00 a.m. |
| | Courtroom:  22 |
| Defendants. | [Assigned for All Purposes to the Honorable Fernando M. Olguin, Courtroom 22] |

28

---

Plaintiff Aladdin Zackaria ("Plaintiff") provides the following Plaintiff's Summary of Evidence ("PSE"), as presented in Plaintiff's Appendix ("PA"), in support of Plaintiff's Motion for Class Certification

| # | FACTUAL STATEMENT | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | Wal-Mart is an international retailer with approximately 220 stores located throughout California. | • PA 19 [Ex. 4] (Wines Decl., ¶ 2). |
| 2 | Wal-Mart's stores are divided into three types: Discount Stores (basic retail stores); Supercenters (basic retail stores with groceries); and Neighborhood Markets (smaller retail stores with limited merchandise). | • PA 349 [Ex. 7.J] (Gomez Depo. at 137:7–23) (listing the three types of stores);<br>• PA 460 [Ex. 7.S] (Watson Depo. at 89:1–6) (same). |
| 3 | Despite different store types, Wal-Mart has implemented a uniform asset protection program to manage the shrink, safety, and security at | • PA 246–47 [Ex. 7.E] (Coburn Depo. at 65:22–66:8) (confirming APCs oversee "the safety security, and asset protection" at Wal-Mart's stores);<br>• PA 365–66 [Ex. 7.K] (Gonzalez Depo. at 95:22–96:2) (testifying that most of his job is "safety, security, [and] shrink"); |

1

| | | each of its stores. | • PA 454 [Ex. 7.S] (Watson Depo. at 65:19–24) (Wal-Mart expects APCs to be responsible for "maintain[ ] the shrink and loss prevention and safety aspects" of the asset protection program). |
|---|---|---|---|
| | 4 | Wal-Mart's asset protection program is run and implemented by a hierarchical and strictly structured asset protection program. | • PA 486 [Ex. 8.A] (Asset Protection Structure in Relationship to Investigations). |
| | 5 | At the top is the Vice-President of Asset Protection who reports directly to Wal-Mart's Chief Operating Officer. | • PA 486 [Ex. 8.A] (Asset Protection Structure in Relationship to Investigations).<br><br>• PA 450 [Ex. 7.S] (Watson Depo. at 20:2–17) (the Vice-President of Asset Protection "is the lead asset protection leader for the organization" and "report to the COO of the entire organization"). |
| | 6 | Under the vice-president are three Senior Directors of Asset Protection (aka "Business Unit Leaders"), who are each responsible for their own geographical "Business Unit" (Eastern, Central, | • PA 486 [Ex. 8.A] (Asset Protection Structure in Relationship to Investigations).<br><br>• PA 268–69 [Ex. 7.F] (Dabney Vol. II Depo. at 155:25–156:2) (confirming that there's three Business Units: Eastern, Central, and Western);<br>• PA 402 [Ex. 7.N] (Lance Vol. I Depo. at 60:9–21) (same).<br><br>Prior to 2010, the organizational structure was |

2

| | | |
|---|---|---|
| | and Western). | slightly different; however, the 2010 restructuring did not affect the organizational structure at the store-level. *See* PA 407–08 [Ex. 7.N] (Lance Vol. I Depo. at 104:12–105:15). |
| 7 | Business Units are divided into "Divisions," led by Divisional Directors of Asset Protection. | • PA 486 [Ex. 8.A] (Asset Protection Structure in Relationship to Investigations).<br><br>• PA 448–449 [Ex. 7.S] (Watson Depo. at 16:18–17:1) (Business Unite Leader testifying that four Divisional Directors report to him). |
| 8 | Divisions are further subdivided into "Regions," led by Regional Asset Protection Managers | • PA 486 [Ex. 8.A] (Asset Protection Structure in Relationship to Investigations).<br><br>• PA 405 [Ex. 7.N] (Lance Vol. I Depo. at 66:2–5) (confirming there is one Regional Asset Protection Manager for each Region). |
| 9 | California is located in Wal-Mart's Western Business Unit's Pacific Division, which consists of four Regions, three of which make up California. | • PA 486 [Ex. 8.A] (Asset Protection Structure in Relationship to Investigations).<br><br>• PA 403–04 [Ex. 7.N] (Lance Vol. I Depo. at 61:15–62:11) (breaking down the asset protection organization in California). |
| 10 | Regions are further subdivided into "Markets," which each | • PA 486 [Ex. 8.A] (Asset Protection Structure in Relationship to Investigations). |

3

| | | |
|---|---|---|
| | contain between 9 to 15 stores and are each led by a Market Asset Protection Manager ("MAPM"). | • PA 403 [Ex. 7.N] (Lance Vol. I Depo. at 61:12–23) (there are approximately "12 to 15" stores in each Market);<br>• PA 468 [Ex. 7.T] (York Depo. at 58:1–3) (Markets are the "level[ ] below regional"). |
| 11 | MAPMs are ultimately responsible for managing the shrink, safety, and security at each of the stores in their Market. | • PA 247 [Ex. 7.E] (Coburn Depo. at 66:4–14) (confirming his "primary job duty" as a MAPM was managing "the safety, security, and asset protection in nine Wal-Mart Stores"). |
| 12 | They do this by managing each store's Asset Protection Coordinator ("APCs"). | • PA 245 [Ex. 7.E] (Coburn Depo. at 17:5–7) (confirming that "[t]here's only one APC in each store");<br>• PA 424 [Ex. 7.P] (Lewis Depo. at 28:5–13) (testifying that MAPMs are responsible for "staff[ing] each of [their] stores with an [APC] when there [is] a position available"). |
| 13 | Recently, Wal-Mart changed the title of the APC position to Asset Protection Manger ("APM"); however, Wal-Mart admits that this title change did not affect the APC's daily | • PA 488 [Ex. 8.B] (email announcing title change from APC to APM that states that "[t]his title change will affect only the name of the job . . . ; no compensation, job description or job duties changes will take place").<br><br>• PA 248 [Ex. 7.E] (Coburn Depo. at 78:6–24) (testifying that the APC title changed to APM |

4

| | | |
|---|---|---|
| | job duties. | "about a year and a half ago"); |
| | | • PA 382 [Ex. 7.L] (Howdeshell Depo. at 118:8–14) (testifying that his job responsibilities did not chance when his title changed from APC to APM). |
| 14 | Under each APC are several Asset Protection Assistants ("APAs"). | • PA 249–50 [Ex. 7.E] (Coburn Depo. at 84:15–85:1) (Plaintiff had between one and four APAs); |
| | | • PA 320 [Ex. 7.I] (Garcia Depo. at 49:24–50:12) (three APAs); |
| | | • PA 361 [Ex. 7.K] (Gonzalez at 27:11–14) (six to nine APAs). |
| 15 | Wal-Mart has drafted an APC job description, which sets forth a finite list of "essential functions" and "competencies" that Wal-Mart claims APCs fulfill on a daily basis. | • PA 491–501 [Ex. 8.C] (the three APC Job Descriptions used during the class period). |
| | | • PA 342 [Ex. 7.J] (Gomez Depo. at 55:9–11) (explaining that the APC job description "summarized essential functions and competencies of an APC"). |
| 16 | But the APC job description is broadly and ambiguously phrased, and does not shed any light on how an APC actually spend his or her time on a day-to-day basis. | • PA 201–12 [Ex. 7.B] (Alvarez M. Depo. at 200:22–202:20) (admitting that the APC job description does not mention the tasks he does on a day-to-day basis); |
| | | • PA 214 [Ex. 7.E] (Alvarez M. Depo. at 340:13–21) (testifying that a judge or jury probably couldn't read the APC job description "by itself and get a complete picture of what [his] day-to-day job duties and tasks are as an APM"); |

5

| | | |
|---|---|---|
| | | • PA 332 [Ex. 7.I] (Garcia Depo. at 180:10–180:16) (explaining that the competencies "don't accurately reflect [his] job duties that [he] perform[s] as an APC on a day-to-day basis"); |
| | | • PA 381 [Ex. 7.L] (Howdeshell Depo. at 89:10–16) (explaining that he doesn't "even really understand that competency" because" because "its took vague for [him] to understand it"); |
| | | • PA 389–90 [Ex. 7.L] (Howdeshell Depo. at 162:21–163:19) (admitting that "competencies aren't job duties that [she is] actually performing as an APC on a day-to-day basis"). |
| 17 | Instead, an APC's day-to-day job duties are actually governed by two of Wal-Mart's national programs: (1) the APC Routine checklist and (2) the National Priorities. | • PA 238–239 [Ex. 7.D] (Banks Depo. at 177:7–178:1) (suggesting that the Court should look at her declaration, rather than Wal-Mart's job description, if it "wanted to know what an APC did on a day-today basis"); |
| | | • PA 331–32 [Ex. 7.I] (Garcia Depo. at 179:25–180:8) (explaining that the APC Routine is "a more accurate representation of what [he] actually did"); |
| | | • PA 343–45 [Ex. 7.J] (Gomez Depo. at 57:18–59:11) (explaining that the essential functions and competencies on Wal-Mart's job description are not "a fair summary of what [his] job was as an APC" because "a majority of [his] time was spent auditing, [not] managing [his] APAs"); |

6

| | | |
|---|---|---|
| | | • PA 356 [Ex. 7.J] (Gomez Depo. at 160:6–23) (testifying that Wal-Mart's job description was not "very representative of what [he] did" on a "day-to-day basis" and that his declaration would be a better description of what he actually did);<br><br>• PA 444 [Ex. 7.R] (Perkins Depo. at 174:7–21) (stating that "the job duties set forth in [his] declaration better describe the actual job duties performed by [him] as an APM than [the] essential functions and . . . competencies"). |
| 18 | In order to ensure that APCs perform their daily, weekly, and monthly job duties, Wal-Mart provides each APC with a Routine to follow. | • PA 363–64 [Ex. 7.R] (Gonzalez Depo. at 67:22–68:4) (explaining that Wal-Mart tells APCs to "follow these routines"). |
| 19 | Wal-Mart describes the Routine as "a prioritized listing of time sensitive, daily and weekly tasks that an APC is responsible from completing" to help APCs "be more time and task effective." | • PA 503–9 [Ex. 8.D] (routines used during class period).<br><br>• PA 234 [Ex. 7.D] (Banks Depo. at 124:11–19) (explaining that the Routine "was a list that went out [that Wal-Mart] wanted an APC to do at a specific time");<br><br>• PA 236 [Ex. 7.D] (Banks Depo. at 170:10–19) (explaining that the Routine would be "use[d] to know what job duties you're supposed to perform on a day-to-day basis"); |

7

| | | |
|---|---|---|
| | | • PA 256 [Ex. 7.E] (Coburn Depo. at 134:5–13) (explaining that a routine is a "document [Wal-Mart] puts out from a position that talks about . . . what a daily, weekly or monthly task would be for that position");<br><br>• PA 341 [Ex. 7.J] (Gomez Depo. at 44:12–20) (describing the Routine as a "checklist" that "just stated what [APCs] had to do on a daily, weekly, monthly basis");<br><br>• PA 440–43 [Ex. 7.R] (Perkins Depo. at 160:2–163:8) (explaining that the Routine "give a general view of what [his] day would look like"). |
| 20 | Put simply, the Routine is a checklist of tasks and duties that *every* ACP is required to complete by a certain time or date. | • PA 314 [Ex. 7.R] (Galbreath Depo. 269:6–9) (confirming that he "complete[s] [the APC Routine] every single day"). |
| 21 | Although the format of the checklist has changed overtime, its list of mandatory duties has largely remained the same. | • PA 503–9 [Ex. 8.D] (routines used during class period). |
| 22 | While the number of duties listed on the | Checking Hazardous Waste<br><br>• PA 202 [Ex. 7.A] (Alamares Depo. at 221:18–25) |

| | | | |
|---|---|---|---|
| | | Routine is too numerous to list here, they include, checking hazardous waste, reviewing CCTV, and inspecting safety equipment. | (confirming that she "verified hazardous waste, food, and leaking item handling");<br>• PA 328–29 [Ex. 7.I] (Garcia Depo. at 163:23–164:5) (same).<br><br>Reviewing CCTV<br>• PA 225 [Ex. 7.C] (Alvarez R. Depo. at 200:5–10) (confirming he reviewed CCTV);<br>• PA 434 [Ex. 7.Q] (Lincoln Depo at 224:9–12 (same).<br><br>Inspecting Safety Equipment<br>• PA 255 [Ex. 7.E] (Coburn Depo at 133:16–20 (confirming that APCs were "required to inspect portable fire extinguishers" at least once per month). |
| | 23 | Wal-Mart describes the National Priorities as a "task based audit program designed to help asset protection and operations focus on high-shrinkage areas and divine into the root causes to then share that information across all partners and organizations." | • PA 510 [Ex. 8.E] (National Priorities Learner Checklist).<br><br>• PA 207–08 [Ex. 7.B] (Alvarez M. Depo. at 153:22–154:3) (describing the National Priorities as "weekly tasks that were assigned to [APCs] and were broken down . . . in buckets such as external theft [and] safety");<br>• PA 218 [Ex. 7.C] (Alvarez R. Depo. at 27:14–21) (describing the National Priorities as "specific tasks that (APCs) do . . . to audit a specific process");<br>• PA 230–31 [Ex. 7.D] (Banks Depo. at 110:15– |

9

| | | |
|---|---|---|
| | | 111:18) (describing the National Priorities as a "checklist of items that need to be done every week for the APM"); |
| | | • PA 295 [Ex. 7.H] (Galbreath Depo. at 102:6–10) (describing the National Priorities as "questions that the company has identified nationally or as a company that needs to be checked, so it's like a checklist"); |
| | | • PA 323 [Ex. 7.I] (Garcia Depo. 139:15–20) (describing the National Priorities as a "checklist that goes from corporate . . . [to] plan what areas to audit throughout the store"); |
| | | • PA 469 [Ex. 7.T] (York Depo. at 99:3–7) (describing the National Priorities as "the priority audits that are conducted at store level in relation to store processes and procedures"). |
| 24 | The difference between the APC Routine Checklist and the National Priorities is that the National Priorities requires APCs to fill out a series of sub-checklists and "YES" or "NO" questions related to asset protection. | • PA 220–21 [Ex. 7.C] (Alvarez R. Depo. at 143:19–144:1) (stating that "there are different steps for [APCs] to follow in order to figure out the answer to" a National Priorities question); |
| | | • PA 231–33 [Ex. 7.D] (Banks Depo. at 121:14–122:6) (testifying that the National Priorities have "certain questions that [she] had to complete" and that did always did them herself); |
| | | • PA 254 [Ex. 7.E] (Coburn Depo. at 117:20–23) ("[t]he SSOPs [are] a weekly checklist"); |
| | | • PA 264 [Ex. 7.F] (Dabney Depo. at 97:20–21) |

| | | (confirming that APCs are "submitting the results of the national priorities" to corporate);<br><br>• PA 277 [Ex. 7.G] (Devine Depo. at 83:5–13) (testifying that the National Priorities "contain[ed] a lot of different tasks that [he was] instructed to complete as an APC");<br><br>• PA 346 [Ex. 7.J] (Gomez Depo. at 83:5–13) (explaining that the National Priorities was a "checklist saying what [APCs] had to audit throughout the week, what [APCs] had to audit monthly, [and] when we had to submit the things [APCs] audited");<br><br>• PA 431–33 [Ex. 7.Q] (Lincoln Depo. at 217:19–219:2) (explaining that the National Priorities were a series of "YES" and "NO" question);<br><br>• PA 439 [Ex. 7.R] (Perkins Depo. at 78:8–21) (explaining that the National Priorities required APCs to complete "daily, weekly, and monthly" questioners"). |
|---|---|---|
| 25 | Those results are then submitted to corporate at periodic times throughout the month so corporate can evaluate national and regional trends. | • PA 237 [Ex. 7.D] (Banks Depo. at 171:1–7) (testifying that APC submit the National Priorities at the end of the week to "let[ ] [Wal-Mart] know that [they] completed certain job duties");<br><br>• PA 264 [Ex. 7.F] (Dabney Vol. II Depo. at 97:20–22) (confirming that APCs submit that National Priorities every week). |
| 26 | When an "exception" is | • *See, e.g.,* PA 514–602 [Ex. 8.F] (random sampling |

| | | |
|---|---|---|
| | found (i.e., anything that is not as it should be), APCs are referred to Wal-Mart's Standard Operating Procedures ("SOPs") for set-by-set instructions on how to remedy the exception. | of Wal-Mart SOPs).<br><br>• PA 209 [Ex. 7.B] (Alvarez M. Depo. at 198:13–18) (explaining that inside the National Priorities are SOPs, "which kind of breaks down and elaborates more on what those assigned tasks are");<br>• PA 223–24 [Ex. 7.C] (Alvarez R. Depo. at 148:16–149:19) (confirming that the National Priorities find "exceptions" or "red flags");<br>• PA 272 [Ex. 7.F] (Dabney Depo. at 159:7–12) (unable to given a "specific example of an SOP that differs for Irvine versus Los Angeles");<br>• PA 284–85 [Ex. 7.G] (Devine Depo. at 187:21–188:14) (testifying that "if [he] found . . an exception, [Wal-Mart] would tell [him] how to go about investigating it on the . . . resolution page");<br>• PA 298 [Ex. 7.H] (Galbreath Depo at 106:6–20) (explaining that "[i]f you find an exception" you use an SOP to tell you "exactly what steps to take" to fix the exception);<br>• PA 386–87 [Ex. 7.L] (Howdeshell Depo at 148:18–149:17) (explaining that "[e]ach question had a standard operating procedure" that "told [APC] how to conduct whatever steps [they] needed tp take . . . to answer the question"). |
| 27 | Wal-Mart occasionally | • PA 276 [Ex. 7.G] (Devine Depo. at 74:16–24) (explaining that the APCs "changes one time while |

| | | changes the tasks and questions on the APC National Priorities | • PA 295 [Ex. 7.H] (Galbreath Depo. at 102:13–18) (explaining that Wal-Mart "either change[s] the questions, or they change the titles"); |
|---|---|---|---|
| | | | • PA 412 [Ex. 7.N] (Lance Vol. I Depo. at124:3–15) (explaining that "each year [Wal-Mart] ha[s] a group of people come in and actually work on developing [the National Priorities], what the questions will be, [and] what process will be reviewed"). |
| | 28 | At any given time, every APC in California is following, filling out, and submitting the same National Priorities forms to corporate. | • PA 222 [Ex. 7.C] (Alvarez R. Depo. at 145:3–5) (testifying that "all APCs are required to complete the same national priorities in a given week"); |
| | | | • PA 435 [Ex. 7.Q] (Lincoln Depo. at 268:13–15) (explaining that the National Priorities were called that because they were a "national report"). |
| | 29 | If an APC fails to properly follow the APC National Priorities or turns in the results late, then the APC is written up and/or disciplined. | • PA 201 [Ex. 7.A] (Alamares Depo. at 139:15–20) (testifying that she did not "have discretion to deviate from the national priorities"); |
| | | | • PA 330 [Ex. 7.I] (Garcia Depo. at 166:14–19) (testifying that APCs could not "deviate from [Wal-Mart's] checklists, . . . policies and procedures"); |
| | | | • PA 354–55 [Ex. 7.J] (Gomez Depo. at 154:17–155:8) (confirming that "[t]here no discretion to just simply not follow [the] AP09" policy); |
| | | | • PA 371–72 [Ex. 7.K] (Gonzalez Depo. at 116:12– |

117:1) (testifying that she "doesn't have any say in the [hazardous waste] checklist. It's something that's sent from home office and from [their] compliance managers");

- PA 380 [Ex. 7.L] (Howdeshell Depo. at 15:8–24) (fired because he "wasn't keeping certain reports and paperwork up to date");

- PA 397 [Ex. 7.M] (Kaiser Depo. at 171:5–22) (testifying that she did not "deviat[e] specifically from a Wal-Mart policy or procedure" because it was her "job to follow policies and procedures" and she could have been "disciplined" or "terminated" if she did").


- PA 604 [Ex. 8.G] (written-up for "not following company guidelines and procedures");

- PA 606 [Ex. 8.G] (written-up for "not turn[ing] in 4 of 8 weeks of National Priorities");

- PA 608 [Ex. 8.G] (written up for "fail[ing] to execute SSOP, APC Routines, and other Company, Regional, and Market Asset Protection and Safety Programs);

- PA 610 [Ex. 8.G] (written-up for "fail[ing] to perform specific job duties and fail[ing] to communicate to the MAPM on why these tasks were not completed");

- PA 612 [Ex. 8.G] (written-up because he "did not complete his Weekly Hazardous Waste Checklist

14

| | | |
|---|---|---|
| | | or his weekly National Priorities. The checklist is a legal matter that MUST be done every 7 days."); <br><br> • PA 614 [Ex. 8.G] (written-up for not keeping "up weekly and consistently with the requirements of National Priorities and market collectables"); |
| 30 | Wal-Mart has conducted time studies on how long it takes APCs to complete the questions and checklists enumerated on the APC National Priorities. | • PA 263 [Ex. 7.F] (Dabney Depo. at 94:2–6) (confirming that there have been "time studies regarding national priorities"); <br><br> • *See* PA 616–668 [Ex. 8.H] (Wal-Mart's complete National Priories time study). |
| 31 | To do this, Wal-Mart surveys a random sample of APCs on how long it takes them to complete each of the National Priorities' tasks. | • PA 411 [Ex. 7.N] (Lance Vol. I Depo. at 118:5–24) (explaining that time studies are done to give the company "a good sense of average of how much time it going to take" each APC to complete his or her National Priorities); <br><br> • *See* PA 616–668 [Ex. 8.H] (Wal-Mart's complete National Priories time study). |
| 32 | Wal-Mart then calculates the average time spent and informs its APCs approximately how long it should take them to complete each task. | • PA 411 [Ex. 7.N] (Lance Vol. I Depo. at 118:5–24) (explaining that time studies are done to give the company "a good sense of average of how much time it going to take" each APC to complete his or her National Priorities). <br><br> • *See* PA 616–623 [Ex. 8.H] (Wal-Mart's complete |

15

| | | | National Priories time study). |
|---|---|---|---|
| | 33 | These studies have concluded that it takes, on average, approximately 22.5 hours each week to complete all the APC National Priorities. | • *See* PA 616 [Ex. 8.H] (Wal-Mart's complete National Priories time study). |
| | 34 | This estimate has been verified through APC testimony. | • PA 278 [Ex. 7.G] (Devine Depo at 136:8–18) (testifying that "[a]proximately 45 percent of [his] time was spent with National Priorities"); <br><br>• PA 296–97 [Ex. 7.H] (Galbreath Depo. at 103:23–104:7) (24 hours a week); <br><br>• PA 324 [Ex. 7.I] (Garcia Depo. at 150:11–16) (25 hours a week); <br><br>• PA 369–70 [Ex. 7.K] (Gonzalez Depo. at 103:14–104:8) (17 hours a week); <br><br>• PA 385–86 [Ex. 7.L] (Howdeshell Depo. at 147:18–148:12) (20 to 22 hours a week); <br><br>• PA 398 [Ex. 7.M] (Kaiser Depo. at 245:5–8) (20 hours a week). |
| | 35 | The checklist and audits enumerated in the APC Routine and National Priorities are the same at every Wal-Mart store, regardless of the store's | • PA 259 [Ex. 7.E] (Coburn Depo. at 176:21–25) (testifying that there are no "differences in the essential duties of APMs in the various markets in California"); <br><br>• PA 282–83 [Ex. 7.G] (Devine Depo. at 175:1–176:2) (testifying that his "job duties were the |

16

| | | |
|---|---|---|
| | size, type, or location. | same as . . .other APCs" because the National Priorities "were the same from store to store"); |
| | | • PA 291–92 [Ex. 7.H] (Galbreath Depo. at 39:1–40:11) (testifying that "the responsibilities in terms of the APC . . . are the same" because "the APC routine has always been the same for every Asset Protection Coordinator or Manager regardless of their location"); |
| | | • PA 293–94 [Ex. 7.H] (Galbreath Depo. at 96:18–97:5) (testifying that he does his "best to follow [the routine] just like every other APM that's in the company"); |
| | | • PA 299 [Ex. 7.H] (Galbreath Depo. at 151:7–13) (explaining that every Wal-Mart has the same Safety Action Plan, "which just goes to show that the APMs are following already a set of standards") |
| | | • PA 322 [Ex. 7.I] (Garcia Depo. at 61:13–24) (testifying that the "shrink departments are basically the same" at Wal-Mart's stores regardless of the "kinds of products the store carries"). |
| 36 | Because of this, APCs can, and often do, work at multiple stores without any additional training. | • PA 300–01 [Ex. 7.H] (Galbreath Depo. at 189:21–190:8) (testifying that he worked at two stores and that "[i]t was pretty much basically the same" because he just followed the APC Routine); |
| | | • PA 338 [Ex. 7.J] (Gomez Depo. at 16:11–16) |

(testifying that he helped out at other stores);

- PA 339–40 [Ex. 7.J] (Gomez Depo. at 37:21–38:23) (testifying that he covered the APC position at three other stores);

- PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 8); (Charukul Decl. at ¶8); (Coggeshall Decl. at ¶ 6); (Devine Decl. at ¶ 6); (Dobranic Decl. at ¶ 6); (Donson Decl. at ¶ 6); (Frogier Decl. at ¶ 6); (Galbreath Decl. at ¶ 6); (Garcia Decl. at ¶ 6); (Gomez Decl. at ¶ 6); (Griffin Decl. at ¶ 6); (Hanchett Decl. at ¶ 6); (Iglesias Decl. at ¶ 8); (Kelly Decl. at ¶ 6); (Lee Decl. at ¶ 6); (Lincoln Decl. at ¶ 6); (Lyon Decl. at ¶ 6); (McCurdy Decl. at ¶ 6); (Montano Decl. at ¶ 6); (Perkins Decl. at ¶ 6); (Sampier Decl. at ¶ 6); (Smith Decl. at ¶ 6); PA (Walkenhauer Decl. at ¶ 6).

| 37 | An APC's job duties do not vary based on his or her level of experience | • PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 8); (Charukul Decl. at ¶8); (Coggeshall Decl. at ¶ 6); (Devine Decl. at ¶ 6); (Dobranic Decl. at ¶ 6); (Donson Decl. at ¶ 6); (Frogier Decl. at ¶ 6); (Galbreath Decl. at ¶ 6); (Garcia Decl. at ¶ 6); (Gomez Decl. at ¶ 6); (Griffin Decl. at ¶ 6); (Hanchett Decl. at ¶ 6); (Iglesias Decl. at ¶ 8); (Kelly Decl. at ¶ 6); (Lee Decl. at ¶ 6); (Lincoln Decl. at ¶ 6); (Lyon Decl. at ¶ 6); (McCurdy Decl. at ¶ 6); (Montano Decl. at ¶ 6); (Perkins Decl. at ¶ |

| | | |
|---|---|---|
| | | 6); (Sampier Decl. at ¶ 6); (Smith Decl. at ¶ 6); (Walkenhauer Decl. at ¶ 6). |
| 38 | Indeed, Earl Watson, the Senior Director of Asset Protection for Wal-Mart's Western Business Unit, testified that "if you strip away the personality-of-the-individual" there are no "major variations or differences" in how the APC position is performed. | • PA 455–56 [Ex. 7.S] (Watson Depo. at 78:18–79:1).<br><br>• *See also* PA 457 [Ex. 7.S] (Watson Depo. at 81:12–13) (testifying that he is the Senior Director of Asset Protection for Wal-Mart's Business Unit). |
| 39 | "[A]n experienced [APC should] be able to shift over to a store they've never worked at and get that AP[C] job done with little new training required." | • PA 461–62 [Ex. 7.S] (Watson Depo. at 91:22–92:2). |
| 40 | This is because there are no "differences in how asset prevention and safety policies and procedures are carried | • PA 458–59 [Ex. 7.S] (Watson Depo. at 83:22–84:2). |

19

| | | |
|---|---|---|
| | out at the store level in the state of California." | |
| 41 | Jim Galbreath explained that he did "pretty much basically the same" thing at the two Wal-Mart store he worked at. | • PA 300–01 [Ex. 7.H] (Galbreath Depo. at 189:21–190:8). |
| 42 | Henry Garcia testified that "the shrink departments [at Wal-Mart's stores] are basically the same" regardless of what "kinds of products" the stores carry. | • PA 322 [Ex. 7.I] (Garcia Depo. at 61:13–24). |
| 43 | Because of this, Henry Garcia's "job duties were nearly identical to the other APCs at other Wal-Mart stores in California." | • PA 322 [Ex. 7.I] (Garcia Depo. at 61:13–24). |
| 44 | Indeed, the only evidence Wal-Mart submits to claim that the differences in its stores results in APCs | • PA 25 [Ex. 5] (Dabney Decl.). |

| | | performing different job duties is the solitary and self-serving declaration of MaryAnn Dabney—a former Regional Asset Protection Senior Manager—which was signed just a mere two days before Wal-Mart's original opposition was due. | |
|---|---|---|---|
| 45 | In it, she highlights the differences in Wal-Mart's stores and then states, in conclusory fashion, that, "in light of these variations, Walmart's asset protection structure affords considerable discretion to its local teams to implement Walmart's strategic asset protection goals." | • PA 25 [Ex. 5] (Dabney Decl. at ¶ 7). |
| 46 | After all, even Ms. Dabney has admitted that Wal-Mart created its | • PA 266–67[Ex. 7.F] (Dabney Depo. Vol. II at 114:25–115:9) (confirming that "Wal-Mart intends |

| | | |
|---|---|---|
| | uniform policies and procedures with the intention that they be followed. | for every SOP to be followed"). |
| 47 | And, as explained above, APCs have confirmed that they actually do follow these policies when performing their job duties. | • PA 201 [Ex. 7.A] (Alamares Depo. at 139:25–20) (testifying that she did not "have discretion to deviate from the national priorities");<br><br>• PA 257 [Ex. 7.E] (Coburn Depo. at 152:1–16) (testifying that an APC "could not deviate from [the] AP09" policy);<br><br>• PA 258 [Ex. 7.E] (Coburn Depo. at 155:15–18) (testifying that "if it's a policy put out by [Wal-Mart], [APCs] are going to follow it");<br><br>• PA 298 [Ex. 7.H] (Galbreath Depo. at 106:6–20) (testifying that "there's a breakdown of SOPs [with] steps to take" to fix each exception, and that deviation from those steps requires either "the approval of the MAPM or store manager");<br><br>• PA 330 [Ex. 7.I] (Garcia Depo at 166:14–19) (testifying that he could not "deviate from [Wal-Mart's] checklists, . . . policies and procedures");<br><br>• PA 347–48 [Ex. 7.J] (Gomez Depo at 93:16–94:13) ("As far as developing a plan [to fix a problem], the plan was developed for us, we just had to execute.") |

| 48 | Patricia Kaiser, for example, testified that she did not "deviat[e] specifically from a Wal-Mart policy or procedure" because it was her "job to follow policies and procedures" and she could have been "disciplined" if she failed to properly follow them. | • PA 397 [Ex. 7.M] (Kaiser Depo. at 171:5–22). |
|---|---|---|
| 49 | And Randall Howdeshell was fired because he "wasn't keeping certain reports and paperwork up to date." | • PA 380 [Ex. 7.L] (Howdeshell Depo. at 15:8–24). |
| 50 | Indeed, there are countless examples of APCs being written-up for failing to comply with Wal-Mart's standardized policies and procedures. | • PA 604 [Ex. 8.G] (written-up for "not following company guidelines and procedures"); <br> • PA 606 [Ex. 8.G] (written-up for "not turn[ing] in 4 of 8 weeks of National Priorities"); <br> • PA 608 [Ex. 8.G] (written up for "fail[ing] to execute SSOP, APC Routines, and other Company, Regional, and Market Asset Protection and Safety Programs); <br> • PA 610 [Ex. 8.G] (written up for "fail[ing] to |

23

| | | |
|---|---|---|
| | | perform specific job duties and fail[ing] to communicate to the MAPM on why these tasks were not completed"); |
| | | • PA 612 [Ex. 8.G] (written-up because he "did not complete his Weekly Hazardous Waste Checklist or his weekly National Priorities. The checklist is a legal matter that MUST be done every 7 days."); |
| | | • PA 614 [Ex. 8.G] (written-up for not keeping "up weekly and consistently with the requirements of National Priorities and market collectables"). |
| 51 | Since Wal-Mart classifies its APCs as exempt employees, they do not receive overtime compensation when they work more than eight hours a day or forty hours a week. | • PA 226 [Ex. 7.C] (Alvarez R. Depo. at 227:4–7) (APC testifying that he "expects to work more than eight hours a day without overtime pay") |
| | | • PA 200 [Ex. 7.A] (Alamares Depo. at 54:21–23) (APC testifying that she "never [was] paid overtime"); |
| | | • PA 251–52 [Ex. 7.E] (Coburn Depo. at 87:20–88:15) (stating that APC schedules "have shifts that are over eight hours" a day); |
| | | • PA 360 [Ex. 7.K] (Gonzalez Depo. at 17:12–16] (APC testifying that she "wouldn't have overtime" because she's "a salary manager"); |
| | | • PA 410 [Ex. 7.N] (Lance Vol. I Depo. at 110:6–8) (testifying that "an [APC] could be required to work 60 hours a week"). |

| | | | • PA 27–191 [Ex. 6] (Anderson Decl. at ¶¶ 3 & 9); (Arvin-Sellers Decl. at ¶¶ 3 & 10); (Autry Decl. at ¶¶ 3, 8 & 10); (Banks Decl. at ¶¶ 3 & 10); (Cardenas Decl. at ¶¶ 3 & 10); (Charukul Decl. at ¶¶ 3 & 9); (Coggeshall Decl. at ¶¶ 3 & 8); (Devine Decl. at ¶¶ 3 & 9); (Dobranic Decl. at ¶¶ 3 & 9); (Donson Decl. at ¶¶ 3 & 8); (Fox-Wilson Decl. at ¶¶ 3 & 10); (Frogier Decl. at ¶¶ 3 & 9); (Galbreath Decl. at ¶¶ 3 & 9); (Garcia Decl. at ¶¶ 3 & 9); (Gomez Decl. at ¶¶ 3 & 9); (Griffin Decl. at ¶¶ 3 & 9); (Hamori Decl. at ¶¶ 3 & 9); (Hanchett Decl. at ¶¶ 3 & 9); (Hook Decl. at ¶¶ 3 & 10); (Howdeshell Decl. at ¶¶ 3 & 10); (Iglesias Decl. at ¶¶ 3 & 9); (Kelly Decl. at ¶¶ 3 & 9); (Lee Decl. at ¶¶ 3 & 8); (Lincoln Decl. at ¶¶ 3 & 9); (Lyon Decl. at ¶¶ 3 & 9); (Martinez Decl. at ¶¶ 3 & 9); (McCurdy Decl. at ¶¶ 3 & 9); (Montano Decl. at ¶¶ 3 & 8); (Ochoa Decl. at ¶¶ 3 & 10); (Oliver Decl. at ¶¶ 3 & 10); (Ortiz Decl. at ¶¶ 3 & 10); (Perkins Decl. at ¶¶ 3 & 9); (Rodriguez-Carranza Decl. at ¶¶ 3 & 10); (Romero Decl. at ¶¶ 3 & 8); (Rupert Decl. at ¶¶ 3 & 10); (Sampier Decl. at ¶¶ 3 & 9); (Schull Decl. at ¶¶ 3 & 7); (Smith Decl. at ¶¶ 3 & 9); (Venegas Decl. at ¶¶ 3 & 8); (Vretzos Decl. at ¶¶ 3 & 10); (Walkenhauer Decl. at ¶¶ 3 & 9). |
| 52 | They are required to | | • PA 290 [Ex. 7.H] (Galbreath Depo. at 32:12–21) |

| | | |
|---|---|---|
| | work as many hours as it takes to get their job done. | (testifying that Wal-Mart told him that the APC job isn't "going to be your typical job" and that "you're going to have to put in a lot of hours"). |
| | | • PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 9); (Arvin-Sellers Decl. at ¶ 9); (Charukul Decl. at ¶ 9); (Coggeshall Decl. at ¶ 8); (Devine Decl. at ¶ 9); (Dobranic Decl. at ¶ 9); (Donson Decl. at ¶ 8); (Fox-Wilson Decl. at ¶ 9); (Frogier Decl. at ¶ 9); (Galbreath Decl. at ¶ 9); (Garcia Decl. at ¶ 9); (Gomez Decl. at ¶ 9); (Griffin Decl. at ¶ 9); (Hamori Decl. at ¶ 9); (Hanchett Decl. at ¶ 9); (Hook Decl. at ¶ 9); (Howdeshell Decl. at ¶¶ 9 & 10); (Iglesias Decl. at ¶ 9); (Kelly Decl. at ¶ 9); (Lee Decl. at ¶ 8); (Lincoln Decl. at ¶ 9); (Lyon Decl. at ¶¶ 8 & 9); (Martinez Decl. at ¶ 9); (McCurdy Decl. at ¶¶ 8 & 9); (Montano Decl. at ¶ 8); (Ochoa Decl. at ¶ 9); (Ortiz Decl. at ¶ 9); (Perkins Decl. at ¶ 9); (Sampier Decl. at ¶ 9); (Schull Decl. at ¶ 7); (Smith Decl. at ¶ 9); (Rupert Decl. at ¶ 9); (Vretzos Decl. at ¶ 9); (Walkenhauer Decl. at ¶ 8). |
| 53 | APCs are "scheduled" to work 45 hours a week. | • PA 251–52 [Ex. 7.E] (Coburn Depo. at 87:20–88:15) (stating that the APCs "schedule was . . . 45 work hours in a week"); <br><br> • PA 279 [Ex. 7.G] (Devine Depo. at 149:17–25) (APC testifying that his "normal working schedule |

| | | |
|---|---|---|
| | | as an APC was 45 hours per week"); <br><br>• PA 367–68 [Ex. 7.K] (Gonzalez Depo. at 101:24–102:1) (APC testifying that her "pay is to reflect 45 hours"). <br><br>• PA 27–191 [Ex. 6] (Banks Decl. at ¶ 9); (Coggeshall Decl. at ¶¶ 5 & 8); (Devine Decl. at ¶ 8); (Dobranic Decl. at ¶ 8); (Howdeshell Decl. at ¶ 9); (Iglesias Decl. at ¶ 7); (Kelly Decl. at ¶ 8); (Lee Decl. at ¶ 8); (Lincoln Decl. at ¶ 8); (Lyon Decl. at ¶ 8); (Martinez Decl. at ¶ 9); (McCurdy Decl. at ¶ 8); (Schull Decl. at ¶ 7); (Smith Decl. at ¶ 8); (Walkenhauer Decl. at ¶ 8). <br><br>It appears that Wal-Mart recently changed the APC work schedule from 45 hours per week to 42 hours per week; however, they still don't get paid for working overtime.  PA 409–10 [Ex. 7.N] (Lance Vol. I Depo. at 109:24–110:5). |
| 54 | It is not uncommon for APCs to work as many as 50 to 60 hours each week | • PA 306 [Ex. 7.H] (Galbreath Depo. at 227:9–12) (testifying that he worked "between 60 to 70 hours" in 2013). <br><br>• PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 7) (stating that he worked 50 to 60 hours per week); (Arvin-Sellers Decl. at ¶ 9) (50 to 60 hours per week); (Autry Decl. at ¶ 7) (60 to 70 hours per week); (Banks Decl. at ¶ 9) (45 hours per week); |

(Cardenas Decl. at ¶ 9) (50 to 60 hours per week); (Charukul Decl. at ¶ 7) (60 to 80 hours per week); (Coggeshall Decl. at ¶ 8) (55 to 60 hours per week); (Devine Decl. at ¶ 8) (50 to 60 hours per week); (Dobranic Decl. at ¶ 8) (45 to 50 hours per week); (Donson Decl. at ¶ 9) (50 hours per week); (Fox-Wilson Decl. at ¶ 9) (50 to 60 hours per week); (Frogier Decl. at ¶ 8) (50 hours per week); (Galbreath Decl. at ¶ 8) (60 to 70 hours per week); (Garcia Decl. at ¶ 8) (50 to 60 hours per week); (Gomez Decl. at ¶ 8) (60 hours per week); (Hamori Decl. at ¶ 7) (50 to 55 hours per week); (Hanchett Decl. at ¶ 8) (50 to 55 hours per week); (Hook Decl. at ¶ 9) (60 to 70 hours per week); (Iglesias Decl. at ¶ 7) (45 to 60 hours per week); (Kelly Decl. at ¶ 8) (45 to 60 hours per week); (Lee Decl. at ¶ 8) (45 to 60 hours per week); (Lyon Decl. at ¶ 8) (45 to 50 hours per week); (Martinez Decl. at ¶ 8) (45 to 50 hours per week); (McCurdy Decl. at ¶ 8) (60 hours per week); (Ochoa Decl. at ¶ 9) (60 to 70 hours per week); (Oliver Decl. at ¶ 9) (60 to 70 hours per week); (Ortiz Decl. at ¶ 9) (50 to 58 hours per week); (Perkins Decl. at ¶ 8) (50 to 60 hours per week); (Rodriguez-Carranza Decl. at ¶ 9) (50 hours per week); (Romero Decl. at ¶ 7) (50 to 55 hours per week); (Rupert Decl. at ¶ 9) (50 to 60 hours per week); (Sampier Decl. at ¶ 8) (50 hours per week);

28

| | | |
|---|---|---|
| | | (Schull Decl. at ¶ 7) (60 to 70 hours per week); (Smith Decl. at ¶ 8) (60 to 80 hours per week); (Venegas Decl. at ¶ 7) (50 to 60 hours per week); (Vretzos Decl. at ¶ 9) (60 hours per week); (Walkenhauer Decl. at ¶8) (45 to 50 hours per week). |
| 55 | Sometimes, APCs work as many as 10 to 12 hours in a single day. | • PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 7) (10 to 11 hours); (Arvin-Sellers Decl. at ¶ 9) (14 to 16 hours); (Autry Decl. at ¶ 7) (10 hours); (Banks Decl. at ¶ 9) (14 to 16 hours); (Cardenas Decl. at ¶ 9) (14 to 16 hours); (Fox-Wilson Decl. at ¶ 9) (14 to 16 hours); (Frogier Decl. at ¶ 8) (12); (Galbreath Decl. at ¶ 8) (12 to 17); (Garcia Decl. at ¶ 8) (10 to 12); (Griffin Decl. at ¶ 8) (10 to 12); (Hanchett Decl. at ¶ 8) (10 to 12); (Hook Decl. at ¶ 9) (14 to 16); (Howdeshell Decl. at ¶ 9) (9); (Iglesias Decl. at ¶ 7) (9 to 10); (Ochoa Decl. at ¶ 9) (10 to 12); (Oliver Decl. at ¶ 9) (16 to 17); (Ortiz Decl. at ¶ 9) (14 to 16); (Rodriguez-Carranza Decl. at ¶ 9) (10 to 12); (Romero Decl. at ¶ 7) (10 to 11); (Rupert Decl. at ¶ 9) (14 to 16); (Sampier Decl. at ¶ 8) (12 to 16); (Venegas Decl. at ¶ 7) (10); (Vretzos Decl. at ¶ 9) (14 to 16). |
| 56 | Wal-Mart is aware of that its APCs work more than 40 hours a week because it creates the | • PA 252 [Ex. 7.E] (Coburn Depo. at 88:6–8) (testifying that Wal-Mart scheduled its APCs to work at least 45 hours a week); |

| | | APCs' 45-hour-a-week "schedules." | • PA 27–191 [Ex. 6] (Banks Decl. at ¶ 9); (Coggeshall Decl. at ¶¶ 5 & 8); (Devine Decl. at ¶ 8); (Dobranic Decl. at ¶ 8); (Howdeshell Decl. at ¶ 9); (Iglesias Decl. at ¶ 7); (Kelly Decl. at ¶ 8); (Lee Decl. at ¶ 8); (Lincoln Decl. at ¶ 8); (Lyon Decl. at ¶ 8); (Martinez Decl. at ¶ 9); (McCurdy Decl. at ¶ 8); (Schull Decl. at ¶ 7); (Smith Decl. at ¶ 8); (Walkenhauer Decl. at ¶ 8). |
|---|---|---|---|
| | 57 | Wal-Mart is aware of that its APCs work more than 40 hours a week because APCs are required to inform their MAPMs of how many days they work. | • PA 307 [Ex. 7.H] (Galbreath Depo. at 228:1–5) (testifying that he would "inform [his] MAPM if [he] was going [to work] extra hours");<br><br>• PA 308 [Ex. 7.H] (Galbreath Depo. 229: 6–21) (testifying that MAPMs would tell him to work past his regularly scheduled shift).<br><br>• PA 27–191 [Ex. 6] (Anderson Decl. at ¶¶ 9 & 10); (Arvin-Sellers Decl. at ¶ 11); (Autry Decl. at ¶ 9); (Banks Decl. at ¶ 11); (Cardenas Decl. at ¶ 11); (Charukul Decl. at ¶¶ 9 & 10); (Coggeshall Decl. at ¶¶ 8 & 9); (Devine Decl. at ¶¶ 9 & 10); (Dobranic Decl. at ¶¶ 9 & 10); (Donson Decl. at ¶ 8); (Fox-Wilson Decl. at ¶ 11); (Frogier Decl. at ¶¶ 9 & 10); (Galbreath Decl. at ¶ 10); (Garcia Decl. at ¶¶ 9 & 10); (Gomez Decl. at ¶¶ 8, 9, 10); (Hamori Decl. at ¶¶ 9 & 10); (Hanchett Decl. at ¶¶ 9 & 10); (Hook Decl. at ¶ 11); (Kelly Decl. at ¶¶ 9 & 10); (Lee Decl. at ¶¶ 3 & 8); (Lincoln Decl. at ¶¶ 3 & |

| | | |
|---|---|---|
| | | 9); (Lyon Decl. at ¶¶ 8 & 9); (Martinez Decl. at ¶ 9); (McCurdy Decl. at ¶ 9); (Ochoa Decl. at ¶ 11); (Oliver Decl. at ¶ 11); (Ortiz Decl. at ¶ 9); (Romero Decl. at ¶ 9); (Rupert Decl. at ¶ 11); (Sampier Decl. at ¶¶ 8 & 9); (Schull Decl. at ¶ 7); (Smith Decl. at ¶ 8); (Vretzos Decl. at ¶ 11); (Walkenhauer Decl. at ¶ 8). |
| 58 | APCs are allowed to take meal breaks. | • PA 206 [Ex. 7.B] (Alvarez M. Depo. at 16:20–23) (testifying that his "45-hour work week schedule . . . includes meal breaks); <br> • PA 253 [Ex. 7.E] (Coburn Depo. at 95:23–25) (APCs were instructed to take a one hour lunch break); <br> • PA 325–26 [Ex. 7.I] (Garcia Depo. at 160:24–161:3) (testifying that he would "[t]ry to take one [meal break] ever day"); <br> • PA 383–84 [Ex. 7.L] (Howdeshell Depo. at 142:17–143:6) (explaining that he would take a meal break "once maybe twice a week"). |
| 59 | APCs are still considered "on duty" when eating, causing their meal breaks to be frequently interrupted or cut short. | • PA 253 [Ex. 7.E] (Coburn Depo. at 95:11–17) (testifying that he "called [APCs when [they] were on [their] lunch break"); <br> • PA 281 [Ex. 7.G] (Devine Depo. at 151:15–24) (testifying that he would sometimes miss his lunch break because he was "finish[ing] up [his] work or an investigation or shoplift apprehension"); <br> • PA 327–28 [Ex. 7.I] (Garcia Depo. at 162:1– |

31

| | | |
|---|---|---|
| | | 163:14) (testifying that his meal breaks got interrupted "twice a week"); |
| | | • PA 396 [Ex. 7.M] (Kaiser Depo. at 108:2–8) (testifying that she received "approximately three" uninterrupted meal breaks each week); |
| | | • PA 463–64 [Ex. 7.S] (Watson Depo. at 98:23–99:3) (admitting there's no policy "to provide APMs a period of time during the day when they can take an uninterrupted meal or lunch break"); |
| | | • PA 477–78 [Ex. 7.N] (Zackaria Vo. II Depo. at 247:17–248:4) (testifying that he only received an uninterrupted meal break "once or twice" a week). |
| 60 | APCs rarely take rest breaks; and even when they do, they are still not relieved of all their duties. | • PA 235 [Ex. 7.D] (Banks Depo. at 152:3–8) (testifying that she did not "regularly take rest breaks"); |
| | | • PA 280–81 [Ex. 7.G] (Devine Depo. at 150:17–151:2) (same); |
| | | • PA 326 [Ex. 7.I] (Garcia Depo. at 161:4–8) (same). |
| | | • PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 11); (Arvin-Sellers Decl. at ¶ 12); (Autry Decl. at ¶ 11); (Banks Decl. at ¶ 12); (Cardenas Decl. at ¶ 12); (Charukul Decl. at ¶ 11); (Coggeshall Decl. at ¶ 10); (Devine Decl. at ¶ 11); (Dobranic Decl. at ¶ 11); (Donson Decl. at ¶ 10); (Fox-Wilson Decl. at ¶ 12); (Frogier Decl. at ¶ 11); (Galbreath Decl. at ¶ |

32

| | | 11); (Garcia Decl. at ¶ 11); (Gomez Decl. at ¶ 11); (Griffin Decl. at ¶¶ 8 & 11); (Hamori Decl. at ¶ 11); (Hanchett Decl. at ¶ 11); (Hook Decl. at ¶ 12); (Howdeshell Decl. at ¶ 12); (Iglesias Decl. at ¶ 11); (Kelly Decl. at ¶ 11); (Lee Decl. at ¶ 10); (Lincoln Decl. at ¶ 11); (Lyon Decl. at ¶ 11); (Martinez Decl. at ¶ 11); (McCurdy Decl. at ¶ 11); (Montano Decl. at ¶ 9); (Ochoa Decl. at ¶ 12); (Oliver Decl. at ¶ 12); (Ortiz Decl. at ¶ 12); (Perkins Decl. at ¶ 10); (Rodriguez-Carranza Decl. at ¶ 10); (Romero Decl. at ¶ 12); (Rupert Decl. at ¶ 12); (Sampier Decl. at ¶ 11); (Schull Decl. at ¶ 9); (Smith Decl. at ¶ 11); (Venegas Decl. at ¶ 10); (Vretzos Decl. at ¶ 11); (Walkenhauer Decl. at ¶ 11). |
|---|---|---|
| 61 | Wal-Mart doesn't include rest breaks in its APCs' schedules | • PA 213 [Ex. 7.B] (Alvarez M. Depo. at 268:9–13) (confirming that Wal-Mart does not "schedule any rest breaks for" its APCs). |
| 62 | APCs are considered part of a store's "management team." | • PA 376 [Ex. 7.K] (Gonzalez Depo. at 171:14–22) (confirming APCs are part of a store's management team);<br><br>• PA 451 [Ex. 7.S] (Watson Depo. at 44:5–11) (same). |
| 63 | Wal-Mart does not instruct its APCs to spend a majority of their | • PA 270–71 [Ex. 7.F] (Dabney Depo. at 157:23–158:3) (testifying that Wal-Mart has not "instructed the APCs as to how to spend any |

33

| | time on "exempt" job duties. | specific percentage of their time"); |
|---|---|---|
| | | • PA 416 [Ex. 7.O] (Lance Vol. I Depo. at 81:21–24) (testifying that APCs are not "informed at any time to spend more than 50 percent on administrative or managerial exempt tasks); |
| | | • PA 417–18 [Ex. 7.O] (Lance Vol. I Depo. at 98:22–99:4) (testifying that APCs are never "informed as to what tasks are administrative in nature and which ones are not"); |
| | | • PA 419–20 [Ex. 7.O] (Lance Vol. I Depo. at 107:22–108:1) (testifying that none of the APCs' "core competencies involve spending . . . more than half of their time engaged in managerial exempt work verses non-managerial, non-exempt"). |
| | | • PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 10); (Arvin-Sellers Decl. at ¶ 11); (Banks Decl. at ¶ 11); (Cardenas Decl. at ¶ 11); (Charukul Decl. at ¶ 10); (Coggeshall Decl. at ¶ 9); (Devine Decl. at ¶ 10); (Dobranic Decl. at ¶ 10); (Donson Decl. at ¶ 9); (Fox-Wilson Decl. at ¶ 11); (Frogier Decl. at ¶ 10); (Galbreath Decl. at ¶ 10); (Garcia Decl. at ¶ 10); (Gomez Decl. at ¶ 10); (Griffin Decl. at ¶ 10); (Hamori Decl. at ¶ 10); (Hanchett Decl. at ¶ 10); (Hook Decl. at ¶ 11); (Howdeshell Decl. at ¶ 11); (Iglesias Decl. at ¶ 10); (Johnson Decl. at ¶ 11); (Kelly Decl. at ¶ 10); (Lee Decl. at ¶ 9); (Lincoln |

| | | |
|---|---|---|
| | | Decl. at ¶ 10); (Lyon Decl. at ¶ 10); (Martinez Decl. at ¶ 10); (McCurdy Decl. at ¶ 10); (Montano Decl. at ¶ 8); (Ochoa Decl. at ¶ 11); (Oliver Decl. at ¶ 11); (Ortiz Decl. at ¶ 11); (Rodriguez-Carranza Decl. at ¶ 11); (Romero Decl. at ¶ 9); (Rupert Decl. at ¶ 11); (Sampier Decl. at ¶ 10); (Schull Decl. at ¶ 8); (Smith Decl. at ¶ 10); (Venegas Decl. at ¶ 9); (Vretzos Decl. at ¶ 11); (Walkenhauer Decl. at ¶ 10). |
| 64 | In fact, Wal-Mart never even trained its APCs on California's exemption requirements; it only trains them on its standardized policies and procedures. | • PA 362 [Ex. 7.K] (Gonzalez Depo. at 51:8–19) (testifying that she didn't "know the difference between an exempt employee and a nonexempt employee"). <br><br> • PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 3); (Arvin-Sellers Decl. at ¶ 3); (Banks Decl. at ¶ 3); (Cardenas Decl. at ¶ 3); (Charukul Decl. at ¶ 3); (Coggeshall Decl. at ¶ 3); (Devine Decl. at ¶ 3); (Dobranic Decl. at ¶ 3); (Donson Decl. at ¶ 3); (Fox-Wilson Decl. at ¶ 3); (Frogier Decl. at ¶ 3); (Galbreath Decl. at ¶ 3); (Garcia Decl. at ¶ 3); (Gomez Decl. at ¶ 3); (Griffin Decl. at ¶ 3); (Hamori Decl. at ¶ 3); (Hanchett Decl. at ¶ 3); (Hook Decl. at ¶ 3); (Howdeshell Decl. at ¶ 3); (Iglesias Decl. at ¶ 3); (Johnson Decl. at ¶ 3); (Kelly Decl. at ¶ 3); (Lee Decl. at ¶ 3); (Lincoln Decl. at ¶ 3); (Lyon Decl. at ¶ 3); (Martinez Decl. |

35

| | | |
|---|---|---|
| | | at ¶ 3); (McCurdy Decl. at ¶ 3); (Montano Decl. at ¶ 3); (Ochoa Decl. at ¶ 3); (Oliver Decl. at ¶ 3); (Ortiz Decl. at ¶ 3); (Perkins Decl. at ¶ 3); (Rodriguez-Carranza Decl. at ¶ 3); (Romero Decl. at ¶ 3); (Rupert Decl. at ¶ 3); (Sampier Decl. at ¶ 3); (Schull Decl. at ¶ 3); (Smith Decl. at ¶ 3); (Venegas Decl. at ¶ 3); (Vretzos Decl. at ¶ 3); (Walkenhauer Decl. at ¶ 10). |
| 65 | But, even if Wal-Mart had trained APCs to spend a majority of their time on exempt job duties, such an instruction would have been unreasonable given the amount of time it takes APCs to complete the checklists and audits enumerated on the APC Routines and National Priorities. | • PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 10); (Arvin-Sellers Decl. at ¶ 11); (Banks Decl. at ¶ 11); (Cardenas Decl. at ¶ 11); (Charukul Decl. at ¶ 10); (Coggeshall Decl. at ¶ 9); (Devine Decl. at ¶ 10); (Dobranic Decl. at ¶ 10); (Donson Decl. at ¶ 9); (Fox-Wilson Decl. at ¶ 11); (Frogier Decl. at ¶ 10); (Galbreath Decl. at ¶ 10); (Garcia Decl. at ¶ 10); (Gomez Decl. at ¶ 10); (Griffin Decl. at ¶ 10); (Hamori Decl. at ¶ 10); (Hanchett Decl. at ¶ 10); (Hook Decl. at ¶ 11); (Howdeshell Decl. at ¶ 11); (Iglesias Decl. at ¶ 10); (Johnson Decl. at ¶ 11); (Kelly Decl. at ¶ 10); (Lee Decl. at ¶ 9); (Lincoln Decl. at ¶ 10); (Lyon Decl. at ¶ 10); (Martinez Decl. at ¶ 10); (McCurdy Decl. at ¶ 10); (Montano Decl. at ¶ 8); (Ochoa Decl. at ¶ 11); (Oliver Decl. at ¶ 11); (Ortiz Decl. at ¶ 11); (Rodriguez-Carranza Decl. at ¶ 11); (Romero Decl. at ¶ 9); (Rupert Decl. at ¶ 11); (Sampier Decl. at ¶ 10); (Schull Decl. at ¶ 8); (Smith Decl. at ¶ 10); |

36

| | | |
|---|---|---|
| | | (Venegas Decl. at ¶ 9); (Vretzos Decl. at ¶ 11); (Walkenhauer Decl. at ¶ 10). |
| 66 | Indeed, APCs estimate that they spend approximately 65% to 95% of their time on what they consider to be non-managerial and non-administrative tasks. | • PA 289 [Ex. 7.H] (Galbreath Depo. at 12:14–16) (testifying that he does not perform "50 percent or more of [his] job duties in a managerial function").<br><br>• PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 4) (stating that he spent 85% of his time on non-exempt job duties); (Arvin-Sellers Decl. at ¶ 4) (same; 70%); (Banks Decl. at ¶ 4) (same; 90%); (Cardenas Decl. at ¶ 4) (same; 80%); (Charukul Decl. at ¶ 4) (same; 90%); (Coggeshall Decl. at ¶ 4) (same; 85%); (Devine Decl. at ¶ 4) (same; 75%); (Dobranic Decl. at ¶ 10) (same; 90%); (Donson Decl. at ¶ 4) (same; 75%); (Fox-Wilson Decl. at ¶ 4) (same; 80%); (Frogier Decl. at ¶ 4) (same; 95%); (Galbreath Decl. at ¶ 4) (same; 70%); (Garcia Decl. at ¶ 4) (same; 65%); (Gomez Decl. at ¶ 4) (same; 70%); (Griffin Decl. at ¶ 4) (same; 85%); (Hamori Decl. at ¶ 4) (same; 95%); (Hanchett Decl. at ¶ 4) (same; 85%); (Hook Decl. at ¶ 4) (same; 95%); (Howdeshell Decl. at ¶ 4) (same; 85%); (Iglesias Decl. at ¶ 4) (same; 85%); (Johnson Decl. at ¶ 4) (same; 70%); (Kelly Decl. at ¶ 4) (same; 95%); (Lee Decl. at ¶ 4) (same; 85%); (Lincoln Decl. at ¶ 4) (same; 85%); (Lyon Decl. at ¶ 4) (same; 85%); (Martinez Decl. at ¶ 4) |

| | | |
|---|---|---|
| | | (same; 70%); (McCurdy Decl. at ¶ 4) (same; 85%); (Montano Decl. at ¶ 4) (same; 90%); (Ochoa Decl. at ¶ 4) (same; 90%); (Oliver Decl. at ¶ 4) (same; 85%); (Ortiz Decl. at ¶ 4) (same; 75%); (Perkins Decl. at ¶ 4) (same; 65%); (Rodriguez-Carranza Decl. at ¶ 4) (same; 80%); (Romero Decl. at ¶ 4) (same; 90%); (Rupert Decl. at ¶ 4) (same; 85%); (Sampier Decl. at ¶ 4) (same; 85%); (Schull Decl. at ¶ 4) (same; 70%); (Smith Decl. at ¶ 4) (same; 85%); (Venegas Decl. at ¶ 4) (same; 90%); (Vretzos Decl. at ¶ 4) (same; 70%); (Walkenhauer Decl. at ¶ 4) (same; 75%). |
| 67 | Or conversely, APCs estimate that they spend approximately 5% to 35% of their time on tasks they consider to be managerial and administrative | • PA 309–11 [Ex. 7.H] (Galbreath Depo. at 253:23–255:23) (30%) (testifying that only 30 percent of his time is spent on exempt job duties).<br><br>• PA 27–191 [Ex. 6] (Anderson Decl. at ¶ 6) (stating that he only spent 15% of his time on exempt job duties); (Arvin-Sellers Decl. at ¶ 8) (same; 30%); (Banks Decl. at ¶ 8) (same; 10%); (Cardenas Decl. at ¶ 8) (same; 20%); (Charukul Decl. at ¶ 6) (same; 10%); (Coggeshall Decl. at ¶ 7) (same; 15%); (Devine Decl. at ¶ 7) (same; 25%); (Dobranic Decl. at ¶ 7) (same; 10%); (Donson Decl. at ¶ 7) (same; 25%); (Fox-Wilson Decl. at ¶ 8) (same; 20%); (Frogier Decl. at ¶ 7) (same; 5%); (Galbreath Decl. at ¶ 7) (same; 30%); (Garcia |

| | | |
|---|---|---|
| | | Decl. at ¶ 7) (same; 35%); (Gomez Decl. at ¶ 7) (same; 30%); (Griffin Decl. at ¶ 7) (same; 15%); (Hamori Decl. at ¶ 6) (same; 5%); (Hanchett Decl. at ¶ 7) (same; 15%); (Hook Decl. at ¶ 8) (same; 5%); (Howdeshell Decl. at ¶ 8) (same; 15%); (Iglesias Decl. at ¶ 6) (same; 15%); (Johnson Decl. at ¶ 8) (same; 30%); (Kelly Decl. at ¶ 7) (same; 5%); (Lee Decl. at ¶ 7) (same; 15%); (Lincoln Decl. at ¶ 7) (same; 15%); (Lyon Decl. at ¶ 7) (same; 20%); (Martinez Decl. at ¶ 8) (same; 30%); (McCurdy Decl. at ¶ 7) (same; 15%); (Montano Decl. at ¶ 7) (same; 10%); (Ochoa Decl. at ¶ 8) (same; 10%); (Oliver Decl. at ¶ 8) (same; 15%); (Ortiz Decl. at ¶ 8) (same; 25%); (Perkins Decl. at ¶ 7) (same; 35%); (Rodriguez-Carranza Decl. at ¶ 8) (same; 20%); (Romero Decl. at ¶ 6) (same; 10%); (Rupert Decl. at ¶ 8) (same; 15%); (Sampier Decl. at ¶ 7) (same; 15%); (Schull Decl. at ¶ 6) (same; 30%); (Smith Decl. at ¶ 7) (same; 15%); (Venegas Decl. at ¶ 6) (same; 10%); (Vretzos Decl. at ¶ 8) (same; 30%); (Walkenhauer Decl. at ¶ 4) (same; 75%). |
| 68 | In reality, Wal-Mart sent a letter to the DOL in 2008 seeking to confirm that "the DOL ha[d] determined that [the | • PA 671 [Ex. 8.I] (Letter to DOL). |

| | | | |
|---|---|---|---|
| | | APC position meets the requisites for exemption from the FLSA's overtime requirements under 29 C.F.R. 541.200" based on the APC job description. | |
| | 69 | The DOL responded by telling Wal-Mart that it was "concerned that [its] statement concerning the exempt status of those people occupying the APC position [was] overly broad." | • PA 672 [Ex. 8.I] (DOL's response). |
| | 70 | It explained that its "finding was that those people who are ***actually performing*** the full range of duties contained in the ***APC position description***, including the exercise of discretion and independent judgment with respect to matters of significance would qualify for | • PA 672 [Ex. 8.I] (DOL's response). |

40

| | | exemption under 29 C.F.R. Part 541.200. . . . [I]ndividual people are exempt based on the ***duties they perform***, positions are not exempt or non-exempt." | |
|---|---|---|---|
| | 71 | Thus, as the DOL correctly pointed out, the Court should examine what duties APCs actually perform, which is best reflected in the APC Routine, National Priorities, SOPs, and declarations filed in support of Plaintiff's motion for class certification. | <ul><li>PA 238–39 [Ex. 7.D] (Banks Depo. at 177:7–178:1) (suggesting that the Court should look at her declaration, rather than Wal-Mart's job description, if it "wanted to know what an APC did on a day-today basis");</li><li>PA 331–32 [Ex. 7.I] (Garcia Depo. at 179:25–180:8) (explaining that the APC Routine is "a more accurate representation of what [he] actually did");</li><li>PA 343–45 [Ex. 7.J] (Gomez Depo. at 57:18–59:11) (explaining that the essential functions and competencies on Wal-Mart's job description are not "a fair summary of what [his] job was as an APC" because "a majority of [his] time was spent auditing, [not] managing [his] APAs");</li><li>PA 356 [Ex. 7.J] (Gomez Depo. at 160:6–23) (testifying that Wal-Mart's job description was not "very representative of what [he] did" on a "day-to-day basis" and that his declaration would be a better description of what he actually did);</li></ul> |

41

| | | |
|---|---|---|
| | | • PA 444 [Ex. 7.R] (Perkins Depo. at 174:7–21) (stating that "the job duties set forth in [his] declaration better describe the actual job duties performed by [him] as an APM than [the] essential functions and . . . competencies"). |
| 72 | That opinion letter states that the DLSE "construes state law, like federal law (see 29 CFR § 541.600), to permit the so-called 'tacking' of one type of exempt work with another type, so that, for example, an employee who spends more than 50% of his worktime performing exempt managerial and exempt administrative work would meet the 'primarily engaged' test." | • PA 678 [Ex. 8.J] (2003 DLSE letter). |
| 73 | However, this letter has lost its persuasiveness due to the recent revisions to the DLSE Enforcement Policies | • PA 680 [Ex. 8.J] (2006 DLSE Manual). |

42

| | | |
|---|---|---|
| | and Interpretations Manual, which "summarizes the polices and interpretations which [the] DLSE has followed and continues to follow in discharging its duty to administer and enforce labor statutes and regulations of the State of California." | |
| 74 | At the end of the manual "is a compilation of the Federal Regulations which were in effect on July 1, 2000. The entire series of 29 C.F.R. §§ 541.102 through 541.602 is included." | • PA 681 [Ex. 8.J] (2006 DLSE Manual). |
| 75 | The DLSE explains that "[*o*]*nly parts* of the[se] regulations were adopted by the IWC for purposes of interpreting the administrative, executive (managerial) and | • PA 681 [Ex. 8.J] (2006 DLSE Manual). |

43

| | | |
|---|---|---|
| | professional exemptions. <u>The portions which are not applicable are in strikeout</u>." | |
| 76 | It goes on to explain that "[t]he inapplicable sections are reproduced here simply as a guide and aid to enforcement staff in explaining the differences between the federal interpretations and those allowed under California law." | • PA 681 [Ex. 8.J] (2006 DLSE Manual). |
| 77 | Plaintiff has indicated his willingness to advocate for their interests, even above his own. | • PA 13–16 [Ex. 3] (Zackaria Decl.). |

Date: March 31, 2014

**R. REX PARRIS LAW FIRM**

By: /s/ John M. Bickford
       John M. Bickford
       Attorneys for Plaintiff and the
       Putative Class